UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KERRY WALKER,

                        Plaintiff,

   -against-

NYS JUSTICE CENTER FOR THE PROTECTION OF PEOPLE WITH SPECIAL NEEDS, DENISE MIRANDA, ITS EXECUTIVE DIRECTOR, and LOUIS P. RENZI,

                        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/08/2020

18-cv-7757 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Kerry Walker ("Walker" or "Plaintiff") commenced the instant action on August 26, 2018. (*See* Complaint ("Compl."), ECF No. 1.) In this action, Plaintiff alleges claims pursuant to 42 U.S.C. §§ 1981, 1983 and 1985 for employment discrimination and violations of equal protection and due process against Defendants NYS Justice Center for the Protection of People with Special Needs; Denise Miranda, its Executive Director; and Louis P. Renzi (together, "Defendants").[1] Plaintiff also brings related claims under state law. Plaintiff's allegations primarily pertain to the Justice Center's procedures, which Plaintiff alleges are constitutionally deficient and used by Defendants in a racially discriminatory manner.

Before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* ECF No. 24.) For the following reasons, Defendants' motion to dismiss is GRANTED.

---

[1] Plaintiff discontinued this action with prejudice as against Defendants Greystone Programs, Inc., Sylvia Doe, and Lydia Roe. (*See* ECF Nos. 33 & 34.)

1

**BACKGROUND**

**I.   Factual Allegations**

The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

A court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6).  *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

**a.   Plaintiff's Employment at Greystone**

Plaintiff became an employee of Greystone Programs, Inc. ("Greystone") in 2012, as a "Direct Support Professional" (DSP). (Compl. ¶¶ 2,10.)  She was assigned to Greystone's "Universal IRA" facility in Wappinger's Falls, New York in or around March 2013. (*Id.* ¶ 11.) She identifies as an "Afro-American woman from Jamaica, the West Indies."  (*Id.* ¶ 12.) Plaintiff claims that Greystone, "aided by a racially biased resident . . . falsely and in bad faith reported to the Justice Center that Plaintiff had committed abuse and neglect at its facility."  (*Id.* 14, 26–41.)

**b.   The Justice Center's Statutory and Regulatory Framework**

The Justice Center is an agency within the New York State Executive Department authorized to investigate incidents of neglect, abuse, or injury of persons with disabilities or

special needs receiving services in facilities or provider agencies. *See* N.Y. Exec. Law § 550 *et seq.*; N.Y. Soc. Serv. Law § 492(1). The Justice Center is authorized to maintain a statewide vulnerable persons' central register ("VPCR"), and procedures for the investigation of allegations of reportable incidents of neglect, abuse, or injury. *See* N.Y. Exec. Law § 553(1)(a); N.Y. Soc. Serv. Law § 492. Within sixty days of the VPCR accepting a report of an allegation of abuse or neglect, the Justice Center must report the findings of is investigation in the VPCR. N.Y. Soc. Serv. Law § 493(1). If the Justice Center substantiates the report of abuse or neglect, it must categorize the report into one or more of four categories. *Id.* § 493(4).[2]

In addition to receiving and investigating reports of incidents, the Justice Center represents New York State in all administrative hearings and proceedings concerning the discipline of state employees charged with having committed abuse or neglect. N.Y. Exec. Law § 553(1)(c).

The Justice Center must notify the subject of the report of its findings, and if the report is substantiated, must notify the subject of their right to request that the report be amended. N.Y. Soc. Serv. Law § 493(3)(c). Within 30 days after being notified of a substantiated report, the subject may request that the VPCR amend the findings of the report. *Id.* § 494(1). If the subject requests amendment, the Justice Center's administrative appeals unit conducts a review of the

---

[2] Category one is serious physical abuse, sexual abuse, or other serious conduct by custodians, and results in the permanent placement of the subject of the report on the VPCR. *Id*. § 493(4)(a) & (5)(a). Category two conduct is substantiated conduct not described in category one, but which constitutes an act of abuse or neglect that "seriously endangers the health, safety, or welfare of a service recipient. . . ." *Id*. § 493(4)(b). A category two finding results in progressive discipline for the subject. Reports resulting in a category two finding are sealed after five years. *Id*. § 493(4)(b) & (5)(b). Category three conduct is "abuse or neglect by custodians that is not otherwise described in categories one and two." *Id.* § 493(4)(c). Reports that result in a category three finding are sealed after five years. *Id.* Category four includes "conditions at a facility or provider agency that expose service recipients to harm or risk of harm where staff culpability is mitigated by systemic problems such as inadequate management, staffing, training or supervision," and instances in which abuse or neglect is substantiated but the perpetrator cannot be identified. *Id.* § 493 (4)(d). For category three and four conduct, the Justice Center must "require the facility or provider agency to develop and implement a plan of prevention and remediation of the deficient conditions." *Id.* § 494(5)(c).

3

report.  14 NYCRR § 700.5.  If the administrative appeals unit declines to amend the findings after conducting its review, the subject may request a hearing before an administrative law judge ("ALJ") to determine "whether the findings of the report should be amended on the grounds that they are inaccurate or inconsistent with the provisions in this article."  N.Y. Soc. Serv. § 494; 14 NYCRR §§ 700.6-700.11.  At the hearing, the Justice Center must establish, by a preponderance of the evidence, that the conduct occurred.  N.Y. Soc. Serv. § 493[3][a][l]; 14 NYCRR §§ 700.6[b].  At the conclusion of the hearing, the administrative law judge issues a report and recommendation setting forth his or her determination of the issues based on the evidence presented at the hearing. 14 NYCRR § 700.12.

The administrative law judge's report and recommendation and the hearing record are then sent to the Justice Center's executive director or his or her designee to make a final determination.  Justice Center regulations require the Executive Director or her designee to make a final determination of an ALJ' s report and recommendation in writing and embodied in an order.  If this final determination conflicts with the ALJ's report and recommendation, then the Executive Director is required to state her reasons in the order.  *See* 14 NYCRR 700.13.  This final determination does not have to adhere to the ALJ's findings of fact or credibility, so long as it is supported by substantial evidence in the record as a whole.  *See*, *e.g.*, *Roberts v. New York State Justice Center for the Protection of People with Special Needs*, 152 A.D.3d 1021, 1024-25 (N.Y. App. Div. 3d Dep't 2017). The order "shall contain notice of the right to seek review of the order pursuant to Article 78 of the Civil Practice Law and Rules."  *See* 14 NYCRR 700.13(b).

    c.  **The Justice Center's Investigation of Plaintiff**

Plaintiff alleges that there was "no plausible reason" for the Justice Center and its hearing officer to believe the Greystone residents' accusations.  (Compl. ¶ 41.)  With respect to the

Justice Center's procedures in general, Plaintiff recites a litany of alleged due process violations. (*See id.* ¶¶ 20–21, 50–64.) Plaintiff alleges that the Justice Center processes deprive a subject of meaningful notice prior to determination, and that its notification to the subject's employer "brands" the subject. (*Id.* ¶¶ 52–53.) The employer then uses the Justice Center's determination to justify the termination of the subject's employment. *Id.* As to Plaintiff's charges, Plaintiff claims that she was not afforded a timely hearing. (*Id.* ¶ 56.)

Furthermore, Plaintiff alleges that (1) the Justice Center and its "hearing officers" aid and abet racial bias, acting as a "de facto hatchet man and facilitator of employer discrimination" (*id.* ¶¶ 16–25); and (2) the "hearing officer's job, as employee of the Justice Center, appears to be to serve as a rubber stamp, . . . [and] that part of their job is to justify the Justice Center's existence . . . ." (*Id.* ¶¶ 22, 64, 72.) Plaintiff specifically targets the actions of Defendant Louis Rezni ("Renzi"), the Justice Center administrative law judge ("ALJ") who presided over her report. (*Id.* ¶¶ 67–71.) Plaintiff further alleges that Defendant Denise Miranda ("Miranda"), the Justice Center's Executive Director, was involved in the alleged constitutional violations. (*Id.* ¶¶ 74–78.)

## LEGAL STANDARD

### I. 12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the

sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

## II.   12(b)(1)

A claim is subject to dismissal under Rule 12(b)(1) if the court lacks subject matter jurisdiction to adjudicate it pursuant to statute or constitutional authority. See Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, a district court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). Plaintiff bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction of the claim asserted. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

## III.   42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two

essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Plaintiff seeks injunctive and declaratory relief against the Justice Center, its Executive Director, and is ALJs, as well as compensatory and punitive damages, for alleged violations of the federal and state constitutions. Specifically, Plaintiff alleges claims of racial discrimination and retaliation in violation of 42 U.S.C. § 1981 (Compl. ¶¶ 80–87, 122–127); a claim of denial of equal employment opportunity under 42 U.S.C. § 1985 (*id.* ¶¶ 88–101); a claim for violation of due process under the federal and state constitutions (*id.* ¶¶ 102–104, 109–110); a request for an injunction against Miranda and the Justice Center (*id.* ¶¶ 105–108); as well as claims arising under state law (*id.* ¶¶ 111–121).

### I. Immunity Under the Eleventh Amendment

Defendants argue that the Eleventh Amendment bars all of Plaintiff's claims against the Justice Center and all claims for damages against Miranda and Renzi in their official capacities. In response, Plaintiff argues that she seeks only prospective declaratory and injunctive relief against the Justice Center, Miranda, and Renzi. (*See* Plaintiff's Memorandum of Law Opposing Motion to Dismiss ("Pl. Opp."), ECF No. 26, at 6–7.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "Although the Amendment, by its terms, bars only federal suits against

state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens . . . ." *Woods v. Rondout Valley Cent. Sch. Dist.*, 466 F.3d 232, 236 (2d Cir.2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). Thus, the Eleventh Amendment bars suit in federal court against a state or its agencies absent consent to such a suit or an express abrogation by Congress of "the constitutionally guaranteed immunity of the several States." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (quoting *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).

A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 252, 131 S.Ct. 1632, 1637, 179 L.Ed.2d 675 (2011) (noting that "the Eleventh Amendment . . . confirm[s] the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant"); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("For over a century [the Supreme Court has] reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.") (quoting *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).

Congress did not abrogate the States' sovereign immunity when it enacted §§ 1983 and 1985, and New York has not waived its immunity. *See Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity.") (internal citations omitted); *Keitt v. City of New York*, 882 F. Supp. 2d 412, 447 (S.D.N.Y. 2011) (holding plaintiff's "§§ 1983, 1985 and 1986 claims against the State of New York and its agencies, including any claims for damages, are . . . barred by the 11th Amendment.");

*Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) (dismissing § 1983 claims for monetary relief against New York State entity). The Justice Center is a State agency, as Plaintiff acknowledges. N.Y. Exec. Law § 551(1); Compl. ¶ 5. All claims against it are therefore barred by the Eleventh Amendment. *See Miller v. Carpinello*, No. 06 CV 12940 (LAP), 2007 WL 4207282, at *2 (S.D.N.Y. Nov. 20, 2007) (dismissing all § 1983 claims against New York State agency).

The claims for damages asserted against the individual Justice Center officials in their official capacities are also barred. *See Davis v. Westchester Cnty. Family Court*, No. 16-CV-9487 (KMK), 2017 WL 4311039, at* 6 (S.D.N.Y. Sept. 26, 2017) (observing "suits against state officials in their official capacity seeking damages are routinely dismissed on immunity grounds.") (citing *Nguyen v. Milliken*, 104 F. Supp. 3d 224, 229 (E.D.N.Y. 2015)). Accordingly, Plaintiff's putative claims under §§ 1983 and 1985 against the Justice Center and its officials sued for damages in their official capacity are barred. *Keitt*, 882 F. Supp. 2d at 447.

In a limited exception to their Eleventh Amendment immunity, under the doctrine of *Ex Parte Young*, state employees can be sued in their official capacities in federal court where the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *See Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–56 (2011) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) and citing *Ex Parte Young*, 209 U.S. 123 (1908)); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013), *cert. dismissed*, 569 U.S. 1040 (2013); *KM Enterprises, Inc. v. McDonald*, 518 Fed. App'x 12, 13 (2d Cir. 2013). But Plaintiff has failed to allege how she would be subject to the Justice Center's processes in the future. The conclusory assertion that "[t]he Justice Center's unlawful actions are ongoing,

continue to damage Plaintiff, and require judicial correction and injunctive relief," (Compl. ¶ 107), is insufficient. *See Pierre v. New York State Dep't of Corr. Servs.*, No. 05 CIV. 0275RJS, 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (finding that an isolated incident of alleged disability discrimination, in conjunction with conclusory language requesting unspecified injunctive relief is insufficient for purposes of *Ex Parte Young*). Plaintiff's Justice Center proceedings have ended, her alleged injuries stem only from past conduct with no plausible threat of future violations to herself. *See Li v. Lorenzo*, 712 F. App'x 21, 23 (2d Cir. 2017) (concluding relief sought was "not prospective" where plaintiff's "disciplinary proceedings ha[d] ended" and he alleged injuries "stemming only from past conduct with no plausible threat of future violations."). Therefore, the *Ex Parte Young* doctrine is inapplicable to Plaintiff's claims.

To the extent that Plaintiff asserts a § 1981 claim against Defendants, such claims are similarly barred, *Bamba v. Fenton*, 758 F. App'x 8, 12 (2d Cir. 2018), and fail for the additional reason that § 1983 "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018) (quoting *Jett v. Dallas Ind. School District*, 491 U.S. 701, 733 (1989) (emphasis added)). Plaintiff's state-law claims are also barred. *Pennhurst*, 465 U.S. at 120–21. Accordingly, all claims against the Justice Center and all claims for damages against Defendants Miranda and Renzi in their official capacities are dismissed with prejudice for lack of subject matter jurisdiction.

II. **Claims Against Defendant Renzi**

Defendants argue that, as an ALJ, Defendant Renzi may avail himself of the defense of absolute judicial immunity. The Court agrees. Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v.*

*Waco*, 502 U.S. 9, 11 (1991).  Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted).  This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated, or declaratory relief was unavailable." 42 U.S.C. § 1983.

As an ALJ, Defendant Renzi performs adjudicatory functions within a government agency, and as such is entitled to absolute immunity from damages liability for their judicial acts. *See Butz v. Economou*, 438 U.S. 478, 514 (1978) (adjudicators within federal agencies entitled to absolute immunity); *Levitant v. Workers Comp. Bd. of New York*, 16 Civ. 6990 (ER), 2018 WL 1274734, at* 5 (S.D.N.Y. Mar. 8, 2018) (observing that "[a]bsolute judicial immunity extends to ALJs," and applying such immunity to Commissioners of the New York State Workers Compensation Board) (quoting *Phillips v. New York State Dep't of Labor Unemployment Ins. Appeal Bd.*, No. 11 Civ. 1633 (JS), 2011 WL 2837499, at *2); *see also Durant v. New York City Haus. Auth.*, No. 12-CV-00937 (NNG) (JMA), 2012 WL 928343, at **1–2 (E.D.N.Y. Mar. 19, 2012) ("[A]bsolute judicial immunity has been further applied to non-federal administrative hearing officers.") (collecting cases).

Judicial immunity does not apply when the judge acts "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9–10; see also *Bliven*, 579 F.3d at 209–10 (describing actions that are

11

judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Plaintiff has not alleged that Renzi took nonjudicial actions or that he acted in the absence of jurisdiction.

Plaintiff emphasizes that the Justice Center is a "prosecuting agency" and asserts that it is "not in any way insulated from personal or institutional bias." (Pl. Opp. at 8.) Plaintiff concludes that the Justice Center employees fall beyond the scope of judicial immunity, citing *Butz*. (*Id.*) Even if Plaintiff's contentions regarding the Justice Center's prosecutorial stance were true, *Butz* specifically addressed this concern. The Supreme Court extended judicial immunity to that context as well:

> [A]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought. . . . We believe that agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment. Because the legal remedies already available to the defendant in such a proceeding provide sufficient checks on agency zeal, we hold that those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision.

*Butz*, 438 U.S. at 515–16. In sum, Defendant Renzi is shielded from Plaintiff's claims by the doctrine of absolute judicial immunity. All claims against Defendant Renzi are therefore dismissed with prejudice.

### III. Claims Against Defendant Miranda

#### a. Personal Involvement of Defendant Miranda in Alleged Violations of Due Process and Equal Protection

Plaintiff alleges that Defendant Miranda violated Plaintiff's due process and equal protection rights. Specifically, Plaintiff alleges that Miranda was "asleep at the switch" as the

Justice Center's leader, or alternatively, that she affirmatively aided and facilitated the alleged deprivation of subject employees' constitutional and statutory rights by "allowing" the processes by which subject employees' rights are allegedly violated and "allowing" the Justice Center investigators to decide whether to "prosecute" allegations of abuse and neglect. (Comp. ¶¶ 74–77.)

Plaintiff is required to allege that Defendant Miranda was personally involved in a constitutional violation. "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). Instead, "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (*quoting Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). As the Second Circuit has explained, the personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiff argues that discovery is expected to reveal that the Justice Center has a policy of unconstitutionally assisting employers in depriving Afro-American and minority health care workers of their constitutional rights. (Pl. Opp. 9.) But Plaintiff has not plausibly alleged any facts that would support even the inference of the existence of such a policy. Such a claim is

13

purely speculative, and as such cannot form the basis for alleging Defendant Miranda's personal involvement.

### b. Judicial Immunity

Plaintiff also fails to rebut Defendant Miranda's assertion of judicial immunity. As Executive Director of the Justice Center, Defendant Miranda, or her designee, reviews the ALJ's report and recommendation and the record of the hearing, and makes a final determination concerning the charges in the form of an order. 14 NYCRR § 700.13. To the extent that Plaintiff asserts claims based on Defendant Miranda's adjudicatory role, as discussed above, those claims are barred by absolute judicial immunity.

### c. Qualified Immunity

To the extent that Plaintiff's claims against Defendant Miranda are not based on her adjudicatory role, those claims are barred by qualified immunity. The doctrine of qualified immunity gives "officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted). To determine whether qualified immunity applies, the Court looks to: (1) "the specificity with which a right is defined"; (2) the existence of Supreme Court or the applicable circuit court case law on the subject; and (3) whether it was "objectively reasonable" for the defendant to believe the conduct at issue was lawful. *See id.* at 231; *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013).

In response, Plaintiff argues that Defendants "intentionally failed to uphold Plaintiff's well-established constitutional right of confrontation." (Pl. Opp. at 7.) However, the Sixth Amendment right of confrontation applies only in criminal proceedings. *See, e.g., Barclay v. New York*, 602 F. App'x 7, 13 (2d Cir. 2015). As to any due process violation, Plaintiff has not submitted any support for the proposition that Plaintiff's due process rights in the context of a state agency's administrative proceeding regarding incidents of neglect, abuse, or injury were clearly established. As Defendants note, Plaintiff could have pursued an Article 78 petition in state court, which would have "provide[d] the requisite post-deprivation process." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011). Plaintiff has therefore failed to show that Defendant Miranda violated any clearly established right.[3] For all these reasons, Plaintiff's claims against Defendant Miranda are dismissed with prejudice.

## IV. Supplemental Jurisdiction

The Court dismisses the remaining state-law claims that Plaintiff asserts under the Court's supplemental jurisdiction. A federal district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over the state-law claims Plaintiffs have asserted. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118,

---

[3] Furthermore, Plaintiff has not sufficiently alleged an equal protection claim because, among other deficiencies, Plaintiff has failed to allege that Defendants acted with discriminatory intent. *See Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (to state an equal protection claim, a plaintiff "must sufficiently allege that defendants acted with discriminatory intent.") (citation omitted).

15

122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeo*ns, 522 U.S. 156, 173 (1997)).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Accordingly, the Clerk of the Court is respectfully directed to terminate Defendants' Motion to Dismiss at ECF No. 24 and to terminate the action.

Dated: October 8, 2020          SO ORDERED:
       White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge